Good morning, your honors. May it please the court. My name is Harvey P. Sackett and I appear on behalf of Cynthia L. Wright. I will track my own time and reserve two minutes. Following steady employment, first as a teacher's aide, and then as a bank teller, Ms. Wright stopped working in 2011 because of mental and physical impairments. The key piece of opinion evidence and the focus of my argument concerns the ALJ's conclusions regarding the consultative psychological evaluation of Dr. April Young. Dr. Young evaluated Wright at the request of the state of California on behalf of the Social Security Administration. Dr. Wright concluded based on her interview and mental status examination, that Wright could not perform activities, work activities, without special or additional supervision. The state agency evaluators said Dr. Young's conclusion was, quote, entirely unsupportive and overly restrictive, unquote. But they never laid eyes on Wright. They wrote three generic sentences as the basis for its conclusion. In turn, the ALJ quoted the state agency conclusion verbatim and rejected this particular portion of Dr. Young's report, giving it no weight. Wright maintains the excuse me, were not specific and more important, not legitimate reasons supported by substantial evidence as required by Lester-versa-Chater and its progeny. There are some facts that are in agreement. While Dr. Young said Wright was cooperative, had accurate memory, and decent attention and concentration, critically, the ALJ failed to mention these findings by Dr. Young. First, her fund of knowledge was limited. She had a history of past and present psychiatric treatment. Wright was taking various medications to treat her major depressive disorder, and she had attended classes for anxiety. The ALJ gave two reasons for rejecting Dr. Young's report. First, she claimed there was no evidence of formal treatment. This is not so. The record shows that Wright was receiving therapy, as well as medication management. And that's reflected throughout all the Kaiser records. She stopped getting regular treatment because she felt she wasn't making progress. She was having difficulty driving a Kaiser and Kaiser and made a change in how they were managing their mental health care. Finally, Dr. Hawkins who treated her had retired. The second point, the ALJ said because Wright drove and did some household chores, this was purportedly consistent with the ability to perform light work on a regular, sustained basis. The ALJ failed to explain the nexus between the two. Insofar as driving, the record reflects that Wright could no longer drive herself to the store. Her daughter would assume responsibility for doing that. If she drove, she'd only gone to Kaiser for her treatment and to get her medications. And repeatedly, quote, presence of driver confirmed unquote, meaning her daughter was the one who drove her there. Insofar as household chores, Wright stopped making regular family dinners. If she did cook, she might do so four times a week. She would take between 30 and 45 minutes, during which time she needed to take a break for 10 minutes or so. Oftentimes her husband would go out to dinner for work. She did a little laundry every two weeks, it would take her significantly longer because of her pain, and she would need help. Wright had three small dogs, she stopped walking them because she couldn't lean down to put on their leash. And her daughter and her husband had resumed that responsibility. Ironically, despite the fact that Wright had made a living as a bank teller, she said she could no longer concentrate. And her husband had resumed all responsibility for paying the bills. She started this by saying improperly discounted Dr. Young's testimony. I, you know, weren't there some things in Dr. Young's testimony that were inconsistent? And the HLJ noted those inconsistencies? Your Honor, if you're speaking to the conflict between what the state agency said, if I'm understanding you correctly, and what Dr. Young said, the HLJ basically said that his conclusion, excuse me, her conclusion was not supported by the record. And because she parsed certain things, meaning those things I noted below, as far as her ability to concentrate and such, she felt that was inconsistent with the ultimate conclusion by Dr. Young, that she could not perform work activities without special or additional supervision. Yeah, it's just that at one point, Dr. Young says that she can deal with the public and then she seems to say, well, she can't do her job. Even though she can, you know, is able to deal with public supervisors and co workers. I thought part of Dr. Young's test statement was was hard to follow and seemed internally inconsistent. Not that some of it didn't match what Mrs. Wright said. That's what I was asking about. I'm sorry, Your Honor. She may have had the ability to deal with the public, but the ability to deal with public, insofar as work activity means you have to do it on a regular sustained basis. So the doctor and we don't know this. The doctor may have felt that she could do it some of the time, but clearly not all the time. And that's why she reached out to the court. Taking its totality, the ALJ did not properly apply the law to the facts. She did not set forth specific and more important, legitimate reasons to reject Dr. Young's opinion. Wright also had problems with her back. Clinical science and findings included MRI studies and x rays, showing that she had degenerative disc disease and spinal stenosis at multiple levels. The diagnoses were bilateral joint pain, lumbar disc disease, and chronic pain. The ALJ rejected that claiming that the clinical findings did not support her statements regarding her limitations. However, the clinical science and findings, again, are repeated throughout the record. And Wright was taking medication for that. I'll reserve the balance of my time. Thank you, Your Honors. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. Elizabeth Feer on behalf of Andrew Saul, the Commissioner of Social Security. This case, with respect to Dr. Young's examination and her conclusions, it boils down to the one finding she made about how the claimant would not be able to sustain a work day or week without special supervision. And both state agency doctors reviewed the record after Dr. Young had made that finding. And Dr. Young herself says on page 1920 of the Certified Administrative Record to take her findings in conjunction with whatever evidence may be developed later, and keep in mind that it was a one-time examination. So there were two doctors who did see it after, so there is more development there. And both of those doctors summarized Dr. Young's findings in full and came to the very reasonable conclusion that that limitation pretty much came out of nowhere. And for... They did not examine Ms. Wright, did they? That's correct. They did see all of the evidence that was in the record to that time. And I would also like you all to keep in mind that Ms. Wright's date last insured is December 2016. So I'm not sure what my opponent was talking about timing-wise with her saying that her activities of daily living have lessened, because if that was the hearing testimony, that's 2017, which is after the date last insured. But I'd also like to point out that Dr. Young didn't review anything objective, whereas the both state agency doctors did review the objective record. On the first page of Dr. Young's report, I think it's 1917, she says that she reviewed an adult disability report, sections one through eight. Well, that's exhibit 2E in the record, which is just the claimant's sort of intake form for the agency. There's nothing objective in there. It says what her complaints are, what her, what impairments she thinks are disabling, who her doctors were, and what her past relevant work was. So it's, there's nothing objective there. So take in mind Dr. Young's own caveat that you should review her findings in conjunction with whatever else is developed in the record. It's our position that the ALJ very reasonably relied on both Dr. Hawkins and Dr. Bradley, who later looked at the record and concluded that Dr. Young's opinion about the inability to function without special supervision was just unsupported. And as Dr., or Judge Rustani had said earlier, there are, that is inconsistent with findings in her own, her own mental status examination, which both doctors pointed out, both state agency doctors pointed out. She found claim it was alert and cooperative. She was able to follow a three-step command. Yes, there are other things in there that are not fully favorable, but overall her mental status examination is very benign. So again, it's our position that both of these doctors were reasonable, substantial evidence the ALJ could use to reject that one conclusion. The conclusions are pretty, it's a one paragraph conclusion for the examining physicians, the state examiners. So it's, I mean, did they just say it's unsupported and that's about the end of it? Well, Your Honor, if you look at pages, it's pages 206 and 205 to 206 for Dr. Hawkins, and then pages 221 to 22 for Dr. Bradley, they did, you can see they reviewed the evidence and they, and the one thing that to answer your question also is there isn't very much just treatment history regarding her psychiatric conditions. So they, that was why they focused on comparing Dr. Hawkins's or Dr. Young's findings to her conclusions. And my opponent's correct. The claimant was receiving medication for her psychiatric conditions, but the ALJ was relying on the fact that she didn't have formal psychiatric treatment. In addition to that therapy, there's the record doesn't support that she had any Again, unless you have further questions about Dr. Young. Oh, the one point I also wanted to make was Dr. Young mentioned claimant not being able to deal with normal work stress, but the ALJ's RFC finding limits her to low stress work, which she also defines as occasional decision making, occasional use of judgment, occasional changes, and then the brief and occasional interaction with others. So we think that is substantial evidence supporting the ALJ's conclusion that that particular finding of Dr. Young was not fully supported. Could you address the, maybe you're about to turn to this, but the ALJ's rejection of Wright's symptom testimony, because as I understand our cases, the ALJ has to specifically identify what the testimony is, that they're finding not to be credible and then explain why. Looking at the discussion up here. So maybe you can help me with that. Yes. Okay. On page 20 of the ALJ's, of the record. So it's page six of the ALJ's decision. And I will admit your honor, it could be better. There's no question the ALJ could have provided a little bit more detail in her findings. But on page 20, the ALJ says the claimant alleged disability because of back problems, depression, diabetes, fibromyalgia, right knee problem, and hypertension. And then she also comments on what the claimant's sister-in-law had said, believed claimant could only walk short distances, had difficulty paying attention for long periods and anxiety with stressful situations. It's our position that that is, that provides enough summary of what the claimant was alleging was disabling her. And then if you go forward into the ALJ's decision, she, she really does rely heavily on the, the detailed findings of, of all four state agency doctors and how they reviewed the record for on the physical side, it was Dr. Eskander and Dr. Hanna, who the ALJ mistakenly refers to as Dr. Han, and then the two psychiatric Hawkins and Bradley. So the ALJ is laying out a connection between what, you know, setting it up. This is what claimant is saying is disabling her and then showing why that medical evidence, including the opinions of the doctors doesn't support those findings. And again, it could be more clear, but then I would like to direct your attention to page 22, which is the last paragraph after the ALJ has gone through and connected the medical evidence and the opinion evidence. And she does point out that claimant's own treating doctor would not issue up an opinion of disability. And then you have the, the, the, you know, that just sounds to me like that doctor was not permitted by her agency to do that. Not that she had any opinion or that it sounded to me like we're saying, I won't give you that was, I'm not permitted to do that. That's not my role in this institution. Isn't that the way to read that? I think that's one way to read it, your honor. And it's certainly a reasonable way to read it. And I think the ALJ is finding is reasonable. I can't, and I was trying to think, I've seen lots and lots of records from Kaiser over the years. And I'm not sure if that's, if I've, I think I have seen doctors from Kaiser issue medical source statements, but I'm not sure. And, but even if that is the way you read it, there's, you can, that's not crucial to the ALJ's analysis. So, but what the ALJ does says in that, in some paragraph, the ALJ points out how she finds that the claimant's impairments would reasonably, reasonably support some level of limitation. But then she says how the, the, the clinical and only supports it to the extent that she, that's assessed in the RFC. And then she actually says, you know, she talks about the x-rays, the MRIs, the doctor's notes, the consultative examinations, and says, after assessing the weight that can be assigned to each opinion, the resulting description of the claimant's limitations takes into account her partially consistent statements about her ability to function along with the medical opinions about her abilities. So to answer Judge Miller, I'm sorry, to answer your question, I think your, your, your case, Brown, Hunter, and then later on Lambert, I think of the cases that really talk about how the ALJ has to do that, the one-to-one thing that you're talking about. But I would like you to keep in mind that both of those decisions say that the reason why they couldn't, they have to be able to follow the ALJ's reasoning. And there has to be enough in that reasoning for you all to conclude that substantial evidence supports the ALJ's findings. And I think we have that here with that paragraph that sums it up. It's, it's not perfect. It could be better, but, but it's, it's more than just the boilerplate summary of what a credibility analysis is, quote unquote, credibility. And then my conclusion that it, it doesn't fit. Here you have more of that. Doesn't Brown, Hunter say that, I mean, I, I don't disagree with what you said in your overview of what the ALJ's reasoning, but, and I think the most natural inference is, you know, that the ALJ must have rejected Wright's testimony to the extent it was inconsistent with the medical evidence that the ALJ laid out. But doesn't Brown, Hunter say like, that we can't just rely on the inference that the testimony was rejected to the extent it's inconsistent with the medical evidence that the ALJ has to say, I am rejecting this testimony. I don't think it's, it, if it does say that it's inconsistent with some other case law you have that says an ALJ doesn't have to use magic words. But I would once again, draw your attention to what Brown, Hunter says about being able to link the medical evidence to the subjective symptom analysis. And here you can link that. If you go through from page 20 to page 22, there is, there is a progression showing the ALJ is aware of what the claimant is saying is disabling her. Here's what the evidence says. And then a very summary, a pretty detailed one saying why all of this doesn't amount to disability. It amounts to what the limitations in the RFC account for. Thank you, counsel. You're muted, Mr. Sackett. Thank you, Your Honor. I'd like to pick up on Judge Miller's question. As I understood his Honor's question, the question was related to how did the ALJ assess rights, statements regarding her activities in daily living and such. The ALJ failed to give specific reasons why those particular statements and testimony were reflective of the ability to perform light work on a regular sustained basis. Counsel talks about the medical evidence, but the question as I heard it was speaking to, in particular, how did the ALJ evaluate rights testimony as far as activities of daily living, the very household work. Secondly, regarding Judge Rastani's question, having done this for a long, long time, I know anecdotally, and only in the rarest of instances is a Kaiser physician permitted to provide any opinion regarding their patient's disability. So this is not a situation where the doctor refused to write something because they didn't believe Wright was disabled. It's simply because Kaiser, as policy, doesn't permit their physicians to do so. Insofar as the ability to perform work prior to the date last insured, what I was referencing was basically Wright had gone from bad to respectful statements regarding her restrictions and activities of daily living. And respectfully, the statement that there was no formal treatment is simply untrue. Starting from excerpts 1966 through 1981, there were at least six instances where Wright had appointments to see Dr. Hawkins. There's a statement saying she was seeing a therapist, she saw Dr. Hawkins again. So to say that she was not getting formal treatment is simply untrue. There is a litany and ongoing chronology of treatment, if not from Dr. Hawkins, from other Kaiser physicians. Can I ask a question? As I read this, it seemed to me the essential issue is not one of physical ability, but of mental ability. Is that the general way you generally view this case? Yes, Your Honor. Okay. Thank you very much, Your Honors. Thank you both for your arguments this morning. The case just argued to be submitted for decisions. And we'll proceed to the oral argument on the next case on our calendar, which is Parani versus Slack Technologies.
judges: Thomas, Restani, Miller